## FRENCH v. FRENCH.

### (Circuit Court of Appeals, Sixth Circuit. December 20, 1904.)

**1. EVIDENCE—ADMISSION—HARMLESS ERROR.**

Where in an action on a note the verdict in favor of defendant must have been rendered on the first defense alleged in defendant's answer, denying that the note was plaintiff's property, alleged error in the admission of evidence relative to a subsequent different defense was harmless.

**2. BILLS AND NOTES—TRANSFER—EVIDENCE.**

In an action on a note by an administrator of the payee, evidence reviewed, and *held* to sustain a verdict finding that the title to the note had been transferred by indorsement and delivery to a third person.

**3. SAME—INSTRUCTIONS.**

Where it was alleged that the note sued on had been transferred by plaintiff's intestate to her daughter by indorsement and delivery, a requested instruction that such indorsement was of no effect unless accompanied by a delivery of the note to the indorsee, with the intention of transferring the title thereof from the payee to the indorsee, and that unless there was such delivery the plaintiff was entitled to consider the indorsement of no effect and cancel the same, was objectionable, as submitting rather the question of plaintiff's right to erase the indorsement, than whether the note was executed and delivered to the indorsee in such a way as to pass title.

**4. SAME—TRANSFER—INSTRUCTIONS.**

In an action on a note alleged to have been transferred by the payee to her daughter, an instruction that if that was the payee's intention, if she made the indorsement, and the note was delivered to the daughter, or delivered to the father for the daughter, or delivered to any one for the daughter, the title passed and the note belonged to the daughter, and not to the mother, thereafter, and the mother's administrator could not recover thereon, but if the indorsement was made by the mother without any view of making provision for the daughter, not intending that the title to the note should pass to her, and there was no delivery of the note to her, or to anybody for her, then the title remained in the mother, was not erroneous, as laying too much stress on the mother's intention in making the indorsement to pass title to the daughter.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

Stanley Matthews, for plaintiff in error.

C. B. Jamison and Sherman T. McPherson, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This suit was brought by Henry Willard French, as administrator of the estate of his mother, Mary Willard French, upon a promissory note reading as follows:

"Hartford, Conn., Aug. 16, 1884.

"On demand I promise to pay to the order of Mrs. Mary Willard French three thousand dollars. Value received.

"[Signed] Alfred Willard French."

It is indorsed:

"Pay my daughter, May W. French.

"[Signed] Mary W. French."

This indorsement, however, was erased by the plaintiff, the administrator, after the note came into his hands.

On the trial, two defenses were relied on: First, that immediately after its execution and delivery the note was indorsed and delivered by the payee to her daughter, May W. French, and was and is still the property of the latter, and not that of the plaintiff; second, that the note was executed and delivered by the defendant to his mother, Mary Willard French, and by her indorsed, delivered, and given to her daughter, May W. French, under a certain family arrangement, and without intention by the parties thereto of the note being considered a lawful personal demand upon the defendant, and without any consideration whatever. The case was tried before a jury, evidence being introduced in support of each of these defenses, and a verdict rendered for the defendant. The assignments of error go to the admission of testimony, over the objection of the plaintiff, tending to support the second defense, and to the refusal to give certain requests to charge made by the plaintiff.

1. The argument at bar was directed principally to the question whether or not the court erred in admitting testimony in support of the second defense. The plaintiff insisted that the purpose of this testimony was to vary and contradict a written contract, and therefore it was inadmissible, both under the general rule and the application thereof made in Burnes v. Scott, 117 U. S. 582, 6 Sup. Ct. 865, 29 L. Ed. 991. On the other hand, the defendant contended that the note was wholly without consideration, and was never executed and delivered and accepted as a note, but as a mere memorandum of a family arrangement. The court below admitted the testimony upon this latter theory, that it went to the consideration of the alleged note, and tended to show, not that the terms of the note were different from what stated, but that it was not, in point of fact, a note at all, but merely a memorandum. In view of the decisions in Burnes v. Scott, 117 U. S. 582, 6 Sup. Ct. 865, 29 L. Ed. 991, and Burke v. Dulaney, 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698, the question is not without interest; but we are relieved from its consideration by the fact that we are satisfied from an examination of the record that the jury based its verdict wholly upon the first defense, and therefore, if the court erred by improp-

erly admitting testimony under the second, no prejudice resulted to the plaintiff.

The testimony introduced in support of the first defense tended to show that Henry French, Sr., owned a residence in Hartford, Conn., upon which there was a mortgage of $5,500. He was indebted to his son, Alfred Willard French, in a certain amount, which was then increasing. He was growing old and in failing circumstances. He had used in his business money belonging to his wife, Mary Willard French. It was supposed the house would sell for $10,000, and that the outstanding claims would amount to about $7,000. Under these circumstances, he made and delivered to his son, Alfred Willard French, the defendant, a deed of this real estate; and Alfred executed and delivered to his mother, Mary Willard French, a note for $3,000, payable on demand. There were present at the time of the execution and delivery of this note the father and mother, the son, Alfred, and the daughter, May W. French. The daughter lived with the father and mother, and, in a sense, was a dependent. After the receipt of the note, in order to make some provision for her, the mother then and there indorsed and delivered it to the daughter, the indorsement being written by the father and signed by the mother, and the daughter turned the note over to her father to keep for her. The father and mother lived together until the death of the latter in 1891. The note was in the possession of the father or mother, or both, until the mother died, and then he took it and kept it until he died in 1899. After his death it was found in his clothes. After the death of the mother, Alfred sold the house for $7,325, being $1,825 above the mortgage. At one time the father lost the note, and then, acting for his daughter, May, requested his son, Alfred, for a new note for $1,800—representing substantially the amount he had received for the house in excess of the mortgage—and Alfred made such a note and sent it to his sister, May. She, however, believing that Alfred had accounted for all he got out of the house in excess of the mortgage, and that nothing was due her, destroyed it.

There was no testimony contradicting that of the defendant and his sister, May, that the note was indorsed and delivered to her by her mother, and by her handed to her father to keep for her. The plaintiff, when he first went on the stand, testified that he was present at the time of the indorsement, and that there was no delivery of the note. Subsequently, on reflection, he took the stand again, and admitted he was not present. Practically the only testimony claimed to be inconsistent with the defense that May W. French was the owner of the note was that of the plaintiff and his sister-in-law, Minnie French, who testified that Henry French, Sr., after his wife's death, made several demands on the defendant to pay the note. In reply to this, the defendant offered in evidence letters from his father showing a written recognition of the fact that the latter held the note as agent for his daughter, May, but the court excluded them, stating that these declarations or demands of Henry French, Sr., long after the execution and delivery of the note, were not competent. The plaintiff also testified that, on the

day of his mother's funeral, the father went to his mother's bureau drawer and took the note out, saying, "I thought it better to come and get this, to take it with me." It is claimed this was proof of possession by the mother, but in view of the fact that the indorsement was on the note, and that it had been delivered to the father to keep, the evidence is equally consistent with the theory that he had had and kept continued possession of the note. He seemed to know where the note was, and, in thus taking it with him, the inference is fair that he was but carrying out the trust imposed by his daughter, May.

The court, after stating the two defenses, and the general nature of the testimony introduced in support of each, said:

"If you find that the title is in the plaintiff, and that there was no family arrangement, then the plaintiff is entitled to recover the face of the note, with interest. If you find that the title is in the plaintiff here, but that there was a family arrangement under which the defendant was to pay upon this note whatever remained after satisfying the mortgage, then this plaintiff would only be entitled to recover such balance, which, it seems to be conceded, is $1,825, with interest. If, on the other hand, you find the title did pass to the daughter, then your finding should be for the defendant, because the effect of that finding would be that this plaintiff is not the owner of the note, and has no right to sue upon it, and no right to recover upon it."

Upon this submission, the jury found for the defendant. It is obvious that in doing so they based their verdict upon the first defense, namely, that the plaintiff was not the owner of the note, but that May W. French was. Indeed, the court had said to them respecting this defense:

"The daughter says the note was delivered to her and she held it in her hands, and that she gave it to her father to take care of for her, and I am not able to recall any testimony to the contrary."

Evidently the second defense—the defense of the family arrangement—had nothing whatever to do with the verdict. That was based on the first defense, and very properly so, for the testimony in support of it was so conclusive that, in our opinion, it would have justified the court in directing a verdict upon that ground.

2. The plaintiff requested the court to give four separate special instructions, which the court declined to do. The first of these is clearly bad. The third and fourth relate to the second defense—that of the family arrangement—and may therefore be passed. The second reads as follows:

"I further charge you that the writing of the words across the back of the note, 'Pay to my daughter, May W. French,' is of no effect unless the same was accompanied by a delivery of the note to May W. French with the intention of transferring the title thereof from Mary Willard French to her, and that, unless there was such delivery, the plaintiff in this case had the right to consider said words of no effect, and to cancel the same."

The charge is objectionable on the ground that it seems to submit to the jury rather the question whether the plaintiff was right in erasing the indorsement, than the question whether the note was executed and delivered to May W. French in such way as to pass the title to her.

The law governing the transfer of the title to a note by indorsement and delivery is stated with sufficient clearness in the charge of the court. After reciting the indorsement, which was conceded, the court said:

"The claim of the defendant is that she intended to give it [the note] to May in order to make provision for her support. If that was her intention, if she made that indorsement, and the note was delivered to the daughter, or delivered to the father for the daughter, or delivered to any one for her daughter, the title passed, and the note belonged to the daughter, and not to the mother, thereafter, and the plaintiff would not be entitled to recover in this action."

Continuing, the court said:

"But if that indorsement was made by the mother without any view of making provision for the daughter, not intending that the title to the note should pass to her, and there was no delivery of the note to her, or to anybody for her, then the title remained in the mother."

It is submitted that too much stress was thus laid upon the intention of the mother, in making the indorsement, to pass the title to the daughter; that the mother may have intended to pass the title when she made the indorsement, but yet may never have delivered the note. But after all, the intention with which an indorsement is made can best be inferred from what was done with the note. If delivered in accordance with the indorsement, obviously the intention was to pass the title, and this was all the court meant by putting the matter as he did. As the court subsequently said, phrasing it another way:

"You are to determine the fact as to whether the mother intended to pass the title in this note to the daughter. If she did intend to pass the title— if there was a delivery to her, or to anybody for her, in furtherance of that intention—then the title did pass, and the title is not in this administrator, and he is not entitled to recover."

It is to be remembered that there was no dispute as to the indorsement. That was conceded.

No error appearing in the record to the prejudice of the plaintiff in error, the judgment of the court below is affirmed.