Argued and submitted July 22, affirmed November 23, 1981,
reconsideration denied January 14,
petition for review denied March 16, 1982 (292 Or 722)

## LANCASTER,
*Plaintiff-Appellant,*

*v.*

## W.A. HARTZELL & ASSOCIATES, INC. et al,
*Defendants-Respondents,*
*and*
## W.A. HARTZELL & ASSOCIATES, INC. et al,
*Third Party Plaintiffs-Respondents,*

*v.*

## RELIANCE UNIVERSAL, INC.,
*Third Party Defendant-Respondent.*

(No. A7709-13079, CA 17049)

637 P2d 150

Dana Taylor, Portland, argued the cause for appellant. With him on the briefs was Howard R. Hedrick, Portland.

Mildred J. Carmack, Portland, argued the cause for respondent W.A. Hartzell & Associates, Inc. With her on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

I. Franklin Hunsaker, Portland, argued the cause for respondent Huggy Bear's Cupboards, Inc. With him on the brief were Ronald E. Bailey, Douglas F. Foley, and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

Clarence R. Wicks, Portland, waived appearance for respondent Reliance Universal, Inc.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Plaintiff filed this action for personal injuries against defendants Reliance Universal, Inc. (Reliance), Huggy Bear's Cupboards, Inc. (Huggy Bear), and W.A. Hartzell & Associates, Inc. (Hartzell), arising out of her use of a wood stain she obtained from Hartzell. The stain, manufactured by Reliance, was sold to Huggy Bear, which in turn sold it to Hartzell. Plaintiff sought to impose liability on all three defendants on theories of strict liability and negligence. The trial court directed a verdict in favor of Reliance, and plaintiff has not assigned that ruling as error. A judgment subsequently was entered in favor of the other two defendants pursuant to a special verdict which found that neither defendant had sold the stain in the ordinary course of business and that neither defendant had been negligent. Plaintiff appeals. We affirm.

The issues are: (1) did defendants Huggy Bear and Hartzell plead and prove that they had not sold the stain in the ordinary course of business; (2) assuming the provisions of the Oregon's Hazardous Substances Act applied, did the trial court properly instruct the jury on defendants' obligations under that Act; and (3) did the trial court err in failing to instruct that statutory negligence constituted negligence in and of itself when the jury was instructed that statutory negligence consists of a violation of the applicable statute?

Huggy Bear manufactured prefinished wood cabinets which were sold exclusively by Hartzell. Hartzell sold kitchen and bathroom cabinets wholesale and dealt through building contractors. Neither defendant sold cabinets or wood stain to the general public.

Plaintiff originally contacted Hartzell's employee Davis. When plaintiff met Davis at Hartzell's place of business, stain was not discussed; plaintiff only wanted to purchase cabinets. Plaintiff handed Davis her business card and told him she was in business with Engler, a building contractor. Plaintiff said she and Engler had some joint building ventures and that she desired to obtain wholesale prices for cabinets. Davis confirmed that Engler was a building contractor, and the cabinets ordered by plaintiff were invoiced to Engler.

Plaintiff subsequently inquired of Hartzell about obtaining a small quantity of wood stain to match the stain on the cabinets. Hartzell obtained some stain from Huggy Bear and invoiced it to Engler. The stain was an industrial product, not available to the general public. Huggy Bear used that particular stain because it was highly volatile and fast drying, features characteristic of an industrial stain.

When plaintiff arrived at Hartzell's to pick up the stain, she was taken to Huggy Bear's place of business and a gallon of stain was delivered to her there by a Huggy Bear employee. Plaintiff objected to the size of the container. Although she testified the label was unreadable, she did not ask for any instructions or information about the stain. The accident occurred when plaintiff later reached into an ashtray to extinguish a smouldering cigarette while wearing gloves that were wet with the stain. The gloves ignited, and she sustained injuries.

Plaintiff first assigns as error the court's instruction that the principles of strict liability do not apply to isolated or incidental sales of goods.[1] Plaintiff contends that while a non-merchant defendant may raise the isolated sale defense by general denial, a merchant defendant must affirmatively plead the defense. We see no compelling reason to adopt such a rule.[2] Our law does not distinguish between sales by merchants and sales by non-merchants. *Harris v. Northwest Natural Gas Company,* 284 Or 571, 576, 588 P2d 18 (1978); *Heaton v. Ford Motor Co.,* 248 Or 467, 470, 435 P2d 806 (1967). Rather, it focuses

---

[1] The errors claimed by plaintiff in her first, third, fourth, fifth, sixth, and ninth assignments of error could not have prejudiced the plaintiff, because the jury did not reach those issues relating to whether the wood stain was a defective product or to defenses based on plaintiff's conduct. These assigned errors were rendered moot when the jury determined that neither defendant was a seller engaged in the business of selling wood stain. A dispositive special finding by the jury makes harmless any error in instructing on issues which the jury did not have to consider. *Payne v. McDonald,* 270 Or 576, 578-79, 528 P2d 552 (1974).

[2] Under Oregon pleading rules, evidence which controverts facts necessary to be proved by plaintiff may be shown under a general denial. *Deering v. Alexander,* 281 Or 607, 613, 576 P2d 8 (1978). Under Restatement (Second) of Torts § 402A, plaintiff had to prove that defendants were engaged in the business of selling wood stain. *See* n 3 *infra.* Defendants' general denial put that question in issue.

on whether the seller is engaged "in the business of selling such a product * * *."[3]

■    Although Oregon courts have not directly confronted the issue of what constitutes a sale outside the usual course of business, a number of other courts have. Generally, it has been held that even if a merchant sells a product, if he is not engaged in the business of selling that particular product in the normal course of business, strict liability may not be imposed. *See, e.g., Siemen v. Alden,* 34 Ill App 3d 961, 963, 341 NE2d 713, 715 (1975). In *Goetz v. Avildsen Tool & Machines, Inc.,* 82 Ill App 3d 1054, 403 NE2d 555, 561 (1980), the court, in affirming the finding that plaintiff had failed to state a cause of action in strict liability, explained:

> "* * * Count I fails to allege activity on the part of [defendant] indicating that [defendant] was involved in the business of manufacturing and selling the drill hopper machine. The allegation of such activity is necessary to establish [defendant's] second function as a manufacturer held to strict liability standards. A manufacturer must be in the business of selling the allegedly defective product to be held strictly liable in tort."

*See also Gilbert v. Stone City Const. Co.,* 357 NE2d 738, 742 (Ind App 1977).

Plaintiff asserts that decisions such as *Goetz* do not represent the rule in Oregon and cites as support *Fulbright v. Klamath Gas Co.,* 271 Or 449, 533 P2d 316 (1975). In *Fulbright,* defendants loaned a potato vine burner to plaintiff's employer as a means of promoting a sale of propane gas. The vine burner exploded, causing serious injury to plaintiff. The Supreme Court held defendants could be held strictly liable for plaintiff's injury. *Fulbright,* however, is inapposite to the present situation. *Fulbright* was decided primarily on two bases. First, the court analogized the mutually beneficial bailment of the vine burners to bailment for hire cases in which courts had applied strict

---

[3] Restatement (Second) of Torts, § 402A(1)(a). Strictly speaking, § 402A does not control this case, because it was tried prior to its codification in ORS 30.920. We recognize, however, that the principles embodied in § 402A have been followed in Oregon since the Supreme Court decided *Heaton v. Ford Motor Co.,* 248 Or 467, 435 P2d 806 (1967). Thus, in deciding whether the principles of strict liability apply to the isolated sale of goods, we look to § 402A(1)(a) and Comment f.

liability principles. 271 Or at 455-59. Second, the court reasoned that "the sale of the propane gas [could not] be logically separated from the loan of the vine burner in which the gas was to be used." 271 Or at 459. Significantly, the *Fulbright* court limited the decision to its facts. 271 Or at 459.

■ The case at issue is not analogous to bailment for hire cases, and the sale of the wood stain did not constitute an integral part of the sale of the cabinets. We conclude that the court did not err in instructing the jury on the issue.

■ Plaintiff also assigns as error the trial court's instruction on the application of the Oregon Hazardous Substances Act, ORS 453.005 *et seq.* Plaintiff contends the court instructed the jury the Act applies *only* when the substance may cause substantial personal injury as a result of any foreseeable use of the product. The trial court's instruction, however, did not contain the restrictive term *only* nor did it state that plaintiff was required to show she had sustained a substantial injury. Rather, in its instruction the court correctly used a portion of the statutory language defining "hazardous substance." ORS 453.005(7)(a). The court instructed:

> "Oregon law provides that containers of a hazardous substance which may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use, be properly labeled."

ORS 453.005(7)(a) defines a hazardous substance as:

> "Any substance which is toxic, * * * inflammable, combustible, * * * if such substance or mixtures of substances *may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use * * *.*" (Emphasis added.)

The court properly used the relevant language of the statute.

■ Plaintiff also complains that the trial court failed to advise the jury that the Hazardous Substances Act is a

"home consumer law." Plaintiff did not request an instruction in those terms. Thus, the trial court did not err.[4]

■ Plaintiff argues that the trial court erred in omitting the following language from its instruction: "* * * [T]he label shall be of such construction and finish as to withstand reasonably foreseeable spillage through foreseeable use." The quoted language comes from OAR 333-16-005(4), which defines the words "prominently" and "conspicuously" for purposes of the Hazardous Substances Act. The court, however, did include in its instructions the most important portion of that definition: " 'Prominently' and 'conspicuously' means that under customary conditions of purchase, storage and use, the required information shall be visible, noticeable, and in clear and legible English. * * *"

No party contends that the label became illegible because of spillage after plaintiff obtained and used the stain container. The only theory upon which the jury could have found that defendants were negligent in failing to label the stain would have been that defendant Hartzell should have replaced the label before the sale, because the evidence indicates the label was unreadable at the time of sale. We find that the court sufficiently covered defendants' duty when it instructed the jury that the warning information had to be "visible, noticeable, and in clear and legible English."

■ The last issue we must address is whether the trial court erred when it refused to instruct the jury that a violation of a statute "constitutes negligence in and of itself." The Supreme Court resolved that issue in *Carter v. Mote,* 285 Or 275, 590 P2d 1214 (1979). As in *Carter,* the trial court here included the first sentence, but omitted the second sentence, of Uniform Jury Instruction No. 10.03. The Supreme Court's comments in *Carter* are instructive:

"* * * [W]e find that the court during its charge to the jury gave the first sentence of Uniform Jury Instruction No. 10.03 but omitted the second sentence. * * *

---

[4] To warrant reversal, the trial court's ruling must be not only erroneous, but prejudicial. *Scanlon v. Hartman,* 282 Or 505, 511, 579 P2d 851 (1978). Because we find in favor of defendants on the issue of whether the court properly instructed the jury on defendants' duty under the Hazardous Substances Act, it is unnecessary to decide whether that Act applies to the present facts.

"Plaintiff contends that the failure to give the second sentence constitutes reversible error. We disagree. First, we would note that the Uniform Jury Instructions do not have the force and effect of statute. There is no statutory requirement, that is to say, that such instructions be given in the form set forth in the book. We agree with plaintiff that the giving of the second sentence would make the instruction much clearer to the jury, but it does not follow that the failure to give the second sentence constitutes reversible error. The first sentence, which the court did give, does inform the jury that in addition to common-law negligence which the court had just defined for the jury there is a species of negligence called 'statutory negligence' and that that term refers to as violation of a statute regulating the driving of a motor vehicle and the duty of a pedestrian on the highway. The court did give to the jury the wording of the applicable statutes quoted in the first part of this opinion. The jury had before it, therefore, the applicable statutes together with the court's charge that there is a form of negligence known as 'statutory negligence' which consists of a violation of one of the pertinent statutes. * * *" 285 Or at 291-92. (Footnote omitted.)

Plaintiff attempts to distinguish *Carter* by arguing that it involved a statute defining a crosswalk and a statute on yielding the right of way to a pedestrian. Plaintiff contends that those statutes are more readily understood by the general public than administrative rules made pursuant to the Hazardous Substances Act. We disagree. The jurors here were instructed on defendants' duties under the Act. As in *Carter,* the jury had before it the applicable statutes, together with the court's charge that there is a form of negligence known as "statutory negligence." We think that constituted a sufficient basis for the jury to decide the issue of statutory negligence.[5]

Affirmed.

---

[5] We note, however, that possible confusion can be avoided if a trial court uses the entire Uniform Jury Instruction No. 10.03.